UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL BROUGHTON,

        Plaintiff,                                           Hon. Robert J. Jonker

v.                                                             Case No. 1:10-CV-902

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 36 years of age as of the date of the ALJ's decision. (Tr. 18, 79). She possesses a General Equivalency Diploma (GED) and worked previously as a nursing aide. (Tr. 108-10, 120).

Plaintiff applied for benefits on August 13, 2002. (Tr. 9). Her application was denied on May 26, 2004, following a hearing before an Administrative Law Judge (ALJ). (Tr. 9). Plaintiff did not appeal this determination, but instead filed another application for benefits on August 9, 2004, alleging that she had been disabled since April 1, 2000, due to memory loss and stomach pains. (Tr. 79-80, 119). Plaintiff's application was denied, after which time she requested a hearing before an ALJ. On November 5, 2007, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Sandra Steele. (Tr. 842-67). In a written decision dated February 6, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 9-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 2-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**[1]

X-rays of Plaintiff's lumbar spine, taken on September 4, 2004, were "negative." (Tr. 431).[2]

On November 11, 2004, Plaintiff participated in a consultive examination conducted by Lynne Emerson, PhD, LLP. (Tr. 819-25). Plaintiff reported that she was disabled "due to stomach problems, pain, asthma, memory loss, and head injury." (Tr. 819). Plaintiff reported that "she was hit with a golf club while in middle school, and she thinks this may be part of the problem, although she had no immediate effects after the incident." (Tr. 819). Plaintiff reported that she simply "stopped working a couple years ago." (Tr. 820). An examination of Plaintiff's memory, revealed: (1) "she couldn't remember five digits forward and three digits backward;" (2) "she couldn't recall two of the three objects in a five-minute memory task;" (3) "couldn't recall her birthday accurately;" but "she recalled Bush, Lincoln, and Washington as past presidents." (Tr. 821). Plaintiff participated in an intellectual assessment, the results of which revealed that she possessed a verbal IQ of 69, a performance IQ of 74, and a full scale IQ of 69 "placing her between the extremely low and the borderline in the range." (Tr. 822-23). Plaintiff was diagnosed with dysthymic disorder and cognitive disorder, not otherwise specified. (Tr. 824). Her GAF score was rated as 55.[3] (Tr. 824).

---

[1] Plaintiff has not challenged the ALJ's findings regarding her physical capabilities. Accordingly, this medical history focuses on Plaintiff's non-exertional impairments relevant to her claim that she suffers from mental retardation.

[2] Citations to the record refer to the page numbers located in the upper right hand corner of the transcript pages, rather than those located in the lower right hand corner of the transcript pages.

[3] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

On April 19, 2005, Plaintiff participated in another consultive examination conducted by Dr. Emerson. (Tr. 729-33). Plaintiff reported that she was disabled "due to memory loss from head injury and stomach pain." (Tr. 729). Specifically, Plaintiff reported that "she had been hit in the head by a golf club when she was in middle school." (Tr. 729). Plaintiff "stated that she had no immediate effects, but now was experiencing a great deal of memory loss." (Tr.729). Plaintiff reported that "she has six children" and that "she carries a piece of paper with their birthdays on it to remind her of how old they are." (Tr. 730). Plaintiff reported that she was presently "taking no medication." (Tr. 729). Plaintiff appeared "withdrawn" and "depressed," but the results of a mental status examination were otherwise unremarkable. (Tr. 731-32). Plaintiff was diagnosed with: (1) dysthymic disorder; (2) major depressive disorder, single, severe; and (3) nicotine dependence. (Tr. 733). Her GAF score was rated as 56. (Tr. 733).

On April 23, 2005, Rom Kriauciunas, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 711-24). Determining that Plaintiff suffered from dysthymic disorder and nicotine dependence, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.09 (Substance Addiction Disorders) of the Listing of Impairments. (Tr. 712-19). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 721). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 721).

Dr. Kriauciunas also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and

5

memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 725-28). Plaintiff's abilities were characterized as "moderately limited" in five categories. (Tr. 725-27). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 163-64). The doctor concluded that Plaintiff was capable of performing "unskilled work" and "is able to do simple tasks on a sustained basis." (Tr. 727).

X-rays of Plaintiff's chest, taken on April 23, 2005, revealed "no acute cardiopulmonary abnormality." (Tr. 340). On April 24, 2005, Plaintiff was hospitalized following an exacerbation of her asthma. (Tr. 323-24). Plaintiff responded to medication and her condition "slowly improved." (Tr. 324). Plaintiff was discharged from the hospital on April 26, 2005, at which point her condition was "stable" and "improving." (Tr. 324). X-rays of Plaintiff's chest, taken on April 28, 2005, revealed "normal appearance of the cardiac, mediastinal, pulmonary vascular and parenchymal structures" with "no [evidence of] discreet or confluent infiltrates." (Tr. 318). X-rays of Plaintiff's chest, taken on May 18, 2005, were "normal." (Tr. 301).

On October 1, 2005, Plaintiff participated in a CT scan of her brain the results of which were "unremarkable." (Tr. 550). X-rays of Plaintiff's pelvis, taken on October 21, 2005, were "unremarkable." (Tr. 265).

At the administrative hearing, Plaintiff testified that she was presently working doing "home-health care [for her] mother" for which she was paid more than $400 a month. (Tr. 848). Plaintiff reported that she worked approximately 30 hours per week caring for her mother. (Tr. 848-49). Plaintiff testified that she previously worked as a certified nurse's aid. (Tr. 849-50). Plaintiff reported that she is able to drive by herself to her mother's house 30 miles away. (Tr. 860-61). When asked what her "most significant problem is," Plaintiff responded "well, it's just I will forget

6

where I'd put things at, and I get depressed a lot." (Tr. 851).  Plaintiff also reported that she experiences asthma and anxiety attacks for which she uses an inhaler. (Tr. 851).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from (1) borderline intellectual functioning; (2) affective disorder; (3) asthma; and (4) history of abdominal and tooth pain, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 11-14). The ALJ concluded that while Plaintiff could not perform her past relevant work, there existed a significant number of jobs she could perform despite her limitations. (Tr. 14-18). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds; (2) she cannot work in an environment with significant exposure to respiratory irritants; (3) Plaintiff can sit, stand, and walk for 6 hours each during an 8-hour workday; (4) she is limited to simple, unskilled, entry-level work that does not require reading, writing, or calculating; (5) she cannot perform work that requires more than limited contact with co-workers or the general public; and (6) she cannot perform work that requires working on an assembly or production line. (Tr. 14). After reviewing the relevant medical evidence, the

Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

The vocational expert testified that there existed approximately 25,700 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 865-66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374-75 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

      a.      The ALJ Did Not Fail to Properly Develop the Record

As noted above, on November 11, 2004, and again on April 19, 2005, Plaintiff was examined by Lynne Emerson, Ph.D. At the outset of the administrative hearing, Plaintiff's counsel requested that the ALJ submit to Dr. Emerson a "psychological functional capacity assessment" form for her completion. (Tr. 845-46). The ALJ took the matter under advisement and ultimately declined Plaintiff's request which Plaintiff asserts constitutes reversible error. Plaintiff cites to no authority in support of this argument and, furthermore, has failed to develop her argument beyond simply asserting the legal conclusion that the ALJ committed legal error.

Plaintiff bears "the ultimate burden of producing sufficient evidence to show the existence of a disability." *Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000) (citations omitted). Only under "special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir., Jan. 31, 2003) (citations omitted); *Nabours v. Commissioner of Social Security*, 50 Fed. Appx. 272, 275 (6th Cir., Nov. 4, 2002) (citations omitted). No such "special circumstances" apply in the present matter.

The ALJ is not required to supplement the record with additional evidence unless the record as it then exists is insufficient to assess Plaintiff's residual functional capacity or otherwise resolve her claims. *See, e.g., Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir., Dec. 11, 2003); *Haney v. Astrue*, 2010 WL 3859778 at *3 (E.D. Okla., Sept. 15, 2010); *Brown v. Commissioner of Social Security*, 709 F.Supp.2d 248, 257 (S.D.N.Y. 2010); *Allison*, 2000 WL 1276950 at *5.

In the Court's estimation, the voluminous record before the ALJ was more than adequate to resolve Plaintiff's claim. Plaintiff had been examined on two separate occasions by Dr. Emerson who completed lengthy and detailed reports concerning her findings and conclusions. Plaintiff's claim was reviewed by an independent records reviewer. The record also contains the results of numerous objective tests and personal examinations.

The Court further notes that Plaintiff did not request that the ALJ refer her to a specialist or other medical professional for evaluation of an alleged impairment for which she had not been previously examined. Likewise, Plaintiff did not request that the ALJ approve or facilitate the performance of a particular diagnostic test or evaluation which had not previously been performed. Instead, Plaintiff requested only that the ALJ supply Dr. Emerson, who had twice previously examined Plaintiff, with a form to complete. Given that the results of Dr. Emerson's two examinations of Plaintiff fail to support her claim for benefits, it is unlikely that asking Dr. Emerson to complete an RFC form would produce evidence supporting Plaintiff's claim. Moreover, Plaintiff, who is represented by counsel, fails to explain why she was incapable of obtaining the information in question herself. As counsel acknowledged at the administrative hearing, he could have attempted to obtain the information himself. Counsel, however, chose not to do so instead leaving it to the ALJ's discretion. The ALJ exercised his discretion, concluding that the record before him was sufficient to resolve Plaintiff's claim. The Court discerns no error in the ALJ's actions.

> b. The ALJ's Decision that Plaintiff does not Satisfy Section 12.05 of the Listing of Impairments is Supported by Substantial Evidence

Plaintiff next asserts that she is entitled to disability benefits because she satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The Court notes

that Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (the claimant bears the burden of proof through step four of the sequential disability determination procedure); *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 527 (6th Cir., Aug. 26, 2003) (claimant bears the burden of establishing that she satisfies a listed impairment). Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1.  Marked restriction of activities of daily living; or

    2.  Marked difficulties in maintaining social functioning; or

    3.  Marked difficulties in maintaining concentration, persistence or pace; or

    4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2008).

    Plaintiff asserts that she satisfies section 12.05(C). As noted above, testing conducted in November 2004, revealed that Plaintiff possessed a verbal IQ of 69, a performance IQ of 74, and a full-scale IQ of 69. Plaintiff also suffers from a physical impairment which imposes additional and significant work-related limitations, as evidenced by the ALJ's RFC determination.

    While Plaintiff satisfies the criteria articulated in subsection (C), she must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that she satisfies the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *See, e.g., West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 697-98 (6th Cir., July 5, 2007) (to satisfy Section 12.05, the claimant must demonstrate that she experienced deficiencies in adaptive functioning prior to attaining the age of 22); *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007) (same); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (same).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime thereafter. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05 or experienced deficiencies in adaptive functioning prior to attaining the age of 22. As the ALJ concluded, Plaintiff suffers from borderline intellectual functioning, a finding that enjoys substantial support in the record. Borderline intellectual functioning and mental retardation, however, are mutually exclusive. *See Cooper*, 217 Fed. Appx. at 451 (a finding that claimant suffers from borderline intellectual functioning precludes finding that she satisfies requirements of Section 12.05); *Lyons v. Commissioner of Social Security*, 2008 WL 4057858 at *3 (W.D. Mich., Aug. 28, 2008) (same).

Plaintiff's work history is also inconsistent with the conclusion that she is mentally retarded. As noted above, Plaintiff successfully worked for several years as a nursing aide and also testified at the administrative hearing that she was presently working approximately 30 hours weekly providing home health-care services. Such indicates that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm'r. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir., Apr. 10, 2007) (claimant possessing an 8th grade education and "gainfully employed until the age of forty-one" not disabled under section 12.05); *Wright v. Astrue*, 2011 WL 1486208 at *7 (N.D. Ind., Mar. 31, 2011) (when assessing whether claimant satisfies section 12.05,

the court must consider more than IQ scores alone and must also consider claimant's work history and other activities); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant who possessed a 10th grade education, and who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment).  It should also be noted that Plaintiff reported to Dr. Emerson that she simply "stopped working."  Plaintiff has identified nothing in the record to suggest that she "stopped working" as a result of any impairment or limitation from which she might suffer.

As discussed above, the evidence does not support Plaintiff's position.  Moreover, aside from noting her low IQ scores, Plaintiff has identified no evidence or authority in support of her position.  Instead, Plaintiff asserts that "the [ALJ] erroneously concludes that it is necessary to establish a low IQ as well as deficits in adaptive functioning in order to meet the listing." (Dkt. #8 at 10-11).  As discussed above, however, the Sixth Circuit has clearly held to the contrary.  The Court declines Plaintiff's invitation to reject controlling Sixth Circuit authority on this question.  Accordingly, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff does not satisfy this Section 12.05 of the Listing of Impairments.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 16, 2011                                                       /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge